[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action seeking the dissolution of an eleven-year marriage on the ground of irretrievable breakdown. The complaint was filed with the court by the plaintiff wife on May 23, 2001. The plaintiff filed an amended complaint on May 23, 2001, and filed a second amended complaint on March 27, 2002. The defendant husband filed a pro-se appearance on July 24, 2001.
A trial was held on March 27, 2002. Both the plaintiff, who was CT Page 4194 represented by counsel, and the defendant, who appeared pro-se, testified during the trial. The only other witness was Family Support Officer Anne Yarusewicz who testified as to the defendant's child support and alimony arrearage. Additionally, numerous documents were introduced into evidence by both parties. After reviewing and weighing the testimony and evidence produced, and having carefully assessed the credibility of the witnesses, the court finds the following to have been proven.
The plaintiff and the defendant, whose prior name was Jacqueline S. Fitts, intermarried on July 7, 1990, in Somers, Connecticut. The parties resided continuously in the State of Connecticut for more than twelve months immediately prior to the date of the complaint. There are two minor children who are issue of this marriage. Katlyn S. Cook was born on March 23, 1993, and Christen C. Cook was born on May 23, 1996. The State of Connecticut has contributed to the support of the minor children during the course of the marriage. The Attorney General was served with a copy of the complaint and filed an appearance in the case. Since all statutory requirements have been satisfied, the court finds that it has jurisdiction over the parties and the marriage.
For the first three years of the marriage both parties worked together in a family owned and operated home improvement business called the New Hope Construction Company. Most of their work involved remodeling, renovations and additions. The defendant did mostly carpentry work and the plaintiff did the painting and detail work.
In 1993 the parties borrowed $40,000 from the parents of the plaintiff for the purpose of buying land upon which they intended to build a house. A letter dated July 7, 1993, which was signed by both parents, the plaintiff, and the defendant, outlines the basic understanding that this was to be a loan, not a gift. (Exhibit A) The defendant denied signing the document but the court notes that the signature on the document and the signature on the defendant's most recent financial affidavit are distinctive and almost identical. The court did not find the defendant's testimony concerning the signature to be credible.
According to the plain language of the letter, the $40,000 was to be repaid at a rate of $400 per month until the defendant started construction of the house. At that time payments would be suspended. Upon the completion of the construction of the house the parties were to obtain a mortgage loan on the property and use those funds to repay the balance of the loan to the parents. The loan itself was not recorded on the land records and is not evidenced by a promissory note.
The evidence is that the land was purchased, the house was subsequently built on the land, and a mortgage loan was secured. Between July 1993 and CT Page 4195 December 1995 a total of $11,200 was repaid to the parents in monthly installments. On August 1, 1997, a lump sum payment of $7,500 was made. No other payments have been made on the loan.
The plaintiff asserts that there was a separate agreement to the effect that the loan was to be interest free for the first three years, but thereafter interest would accrue on the balance of the unpaid loan at a rate of 6% per annum. There is no documentation to support that claim and the parents of the plaintiff did not testify. The defendant acknowledges that there was some agreement regarding interest but insists that the parents thereafter stated that they would forgive the loan as an advance upon the plaintiff's inheritance.
The plaintiff did introduce a document (Exhibit H) which purports to sustain her claim regarding the payment of interest on the loan. However, the document is unsigned, undated, and, based upon the dates of the transactions contained within the document, it could not have been created at or near the date of the loan. It appears to have been created solely for use at trial.
The parties first child was born in 1993 after which the plaintiff worked as a stay-at home mother for a period of time to care for the child. After their second child was born in 1996, the parties opened a deli/convenience store in which the plaintiff worked until October 1997. Thereafter she worked with the defendant in their home improvement business for several months and then, by mutual agreement, remained at home with the children for almost three years. In September 2000 the plaintiff obtained employment as a para professional at a local school where she remained employed until December 2001. Throughout the marriage the husband was the primary financial provider for the family and the wife was the primary care giver for the children.
The reasons for the breakdown of this marriage are not easily definable. During the marriage the defendant demonstrated a problem with alcohol, and the plaintiff manifested a violent temper. There is evidence that there were at least two incidents of domestic violence on the part of the wife during the marriage. Once the plaintiff pushed the defendant down a flight of stairs and on another occasion she broke a number of windows in the house. The police were called by the husband on both occasions. There is also evidence that the husband would sometimes stay out all night drinking, and on one occasion he was gone for four days. This volatile relationship reached its apex in March 2001 when the husband left the marital home and moved in with another woman. This action was filed soon after.
The court was not persuaded by the testimony that either party was CT Page 4196 significantly more at fault for the breakdown of the marriage than the other. The court finds the credibility of both parties to have been strained at times during the course of the trial.
The defendant asserts that he was hospitalized with pancreatitis during the Spring of 2001. Since he did not have medical insurance, his treatment resulted in a debt to the hospital of more than $26,000. He submitted a "final notice" from Rockville General Hospital dated February 6, 2002, indicating that he has an outstanding balance of $26,876.67 for hospital services of May 3, 2001. (Exhibit 6).
On June 26, 2001, the parties entered a stipulated pendente lite agreement for alimony and child support. In the agreement, the defendant represented that he earned $600.00 per week, and he agreed to pay to the plaintiff child support in the amount of $163.00 per week and alimony in the amount of $50.00 per week. That agreement was made an order of the court. During this trial, evidence was received from a Support Enforcement Officer that as of March 27, 2002, the defendant was $5,411 in arrears for court ordered pendente lite child support, and $1,180 in arrears for court ordered pendente lite alimony. The court hereby finds that the defendant is in arrears in these amounts as of the date of trial.
In the Fall of 2001, the defendant was injured in an automobile accident which, he claims, resulted in his being unable to work full time. He alleges that he was a passenger in an automobile owned and being operated by a friend when another car went through a stop sign and broadsided the car he was in. He did not go to the hospital for any injuries sustained in the accident but he did subsequently seek medical treatment from a family practitioner physician. He is not receiving physical therapy but he claims to be taking medication prescribed by his doctor. The defendant has spoken with an attorney and said that he intends to seek recovery of his medical bills and lost wages resulting from this accident.
Both parties moved out of the State of Connecticut during the pendency of this action. The plaintiff and two children, with the permission of the court, relocated to South Yarmouth, Massachusetts in December 2001. They are residing with the plaintiff's boyfriend in his home in South Yarmouth. The children are enrolled in the South Yarmouth school system and are apparently doing well.
The plaintiff is doing interior house painting as a subcontractor for K.C. Installations in South Yarmouth, Massachusetts. That company is owned by her boyfriend who pays her $300.00 per week for her work. According to her testimony, and her financial affidavit, she then pays CT Page 4197 him $150.00 per week for rent.
The defendant has relocated to Bristol, Rhode Island where he is residing with his girlfriend. He asserts that he is unable to do the heavy work required of a carpenter due to the injuries he sustained as a result of the automobile accident. However, he admits that he has been working on various projects and claims to earn $300.00 per week out of which, according to his financial affidavit, he pays $212.00 per week for rent. He admitted that he is licensed as a contractor in Rhode Island and stated that he is only waiting for his share of the marital assets to be able to set up a new construction business. He claims that once that is done, money for child support and alimony will not be a problem.
The court does not find the defendant's testimony regarding his ability to obtain and maintain full time gainful employment at this time to be credible. The court finds, based upon the defendant's work history, employment skills, and current physical ability, that he is under employed and that his current earning potential is $600.00 per week.
Other than items of personal property, the only significant marital asset of this eleven-year marriage involves the marital residence. The parties do not have any retirement or savings accounts.
On September 17, 2001, the court granted the plaintiff's motion to sell the marital home located at 93 Sokol Road, Somers, Connecticut in order to avoid a foreclosure and preserve the value of this marital asset. The court further ordered that the proceeds from the sale were to be used to pay the first and second mortgages on the property as well as all reasonable closing costs. Additionally, the plaintiff was authorized to use $6,000 of the proceeds for the purpose of relocating herself and the two children to a new residence. Finally, the balance of the money was to be placed in escrow by plaintiff's attorney until further order of the court.
The property was sold on December 21, 2001, and the proceeds were distributed in accordance with the orders of the court. As of the date of trial, counsel for the plaintiff had approximately $43,590.00 in the escrow account plus a separate check from the first mortgage holder bank payable to the plaintiff in the amount of $4,244.66.
As for liabilities, the financial affidavits of both parties list loans which they claim to have obtained from their parents. The plaintiff claims loans from her father in the amount of $36,768 for expenditures relating to the marital residence, and the defendant lists loans from his mother in the amount of $13,000 relating to the establishment of the defunct deli/convenience store. Additionally the defendant lists the CT Page 4198 $26,876 debt to the Rockville Hospital for his medical treatment and hospitalization in May 2001. All of these debts were incurred by the parties during the marriage.
Both parties agree that they should share joint legal custody of the children, that the children should continue to reside with the mother, and that the father should have reasonable rights of visitation.
The plaintiff has successfully completed a required parenting education program. The defendant, however, has not completed the parenting education program which he is required to do pursuant to the automatic court orders served upon him along with the complaint for dissolution. It is the order of the court that until the defendant completes the parenting education program he shall not be entitled to a hearing on any custody/visitation motions that he may file regarding the minor children without a showing of good cause.
After taking into consideration all of the criteria and factors set forth in § 46b-62, § 46b-81, and § 46b-82, and applying the same to the evidence, the court enters the following orders.
A decree is entered dissolving the marriage of the parties on the grounds of an irretrievable breakdown, all the allegations of the complaint having been proven.
1. The parents shall have joint legal custody of the minor children. The primary residence of the children will be with the mother who will be the custodial parent for the children. The father shall have reasonable parenting and visitation rights.
2. The defendant is ordered to pay child support for the minor children in the amount of $160 per week which, based upon the earning capacity of the defendant, is within the parameters of the child support guidelines. The defendant shall continue to be obligated for child support until the youngest child reaches the age of nineteen years or graduates from high school, whichever occurs sooner.
3. The parties shall split the state and federal income tax exemptions for the minor children, provided the defendant is current in paying the court ordered child support as of December 31 of the year for which the taxes are payable. If the defendant is not current in paying child support by that date, the plaintiff shall be entitled to claim both children for the tax year. If and when only one child can be claimed as an exemption, the parties shall alternate claiming the exemption with the defendant claiming the child in odd numbered years, provided the defendant is current in his child support payments. CT Page 4199
4. The defendant shall provide health and dental insurance for the children if available at reasonable cost through his employer for so long as he is obligated to pay child support for said children. If said medical insurance is unavailable to the defendant, the mother shall be responsible for obtaining and maintain such insurance, if available through her employer, for the children. Unreimbursed medical, dental, and other health related expenses for the minor children shall be shared according to the child support guidelines: 40% by the plaintiff and 60% by the defendant, after the first $100 deductible which is to be paid by the plaintiff The provisions of Connecticut General Statutes § 46b-84
shall apply. The plaintiff shall also be responsible for 60% of any childcare expenses for the minor children, pursuant to the child support guidelines.
5. The defendant shall pay periodic alimony to the plaintiff in the amount of $50.00 per week for a period of four years. The alimony is nonmodifiable as to term except that the alimony shall earlier terminate upon the death of either party or the marriage of the plaintiff No alimony is awarded to the defendant.
6. As part of the overall equitable distribution of the marital property relating to this dissolution, all of the remaining funds resulting from the sale of the marital residence being held by plaintiff's attorney shall be divided between the parties with 60% going to the plaintiff and 40% to the defendant. The $6,000 that the plaintiff was previously given from the proceeds of the sale of the marital home for relocation expenses shall not be included in this distribution. The total arrearage of court ordered pendente lite child support and alimony of $6,591, as of the date of trial, shall be deducted from the defendant's share of the proceeds and added to the plaintiff's share prior to distribution.
7. The plaintiff shall retain her interest in the 1999 Ford Taurus automobile and shall hold the defendant harmless thereon.
8. The defendant is awarded sole interest and ownership in the 1996 Dodge pick-up truck and the 1986 Ford dump truck and shall hold the defendant harmless thereon. He shall be solely responsible for the payment in full of any loans on said vehicles and shall refinance any loan that is in the plaintiff's name within 90-days of this judgement.
9. The parties shall retain all items of personal property currently in their possession free from any claim by the other party.
10. Each party shall retain sole ownership of any bank accounts listed CT Page 4200 on their financial affidavits.
11. Each party shall be solely responsible, and hold the other harmless, for the debts listed on their individual financial affidavits dated March 27, 2002.
12. The defendant shall be solely responsible for the payment of the parties 1999 and 2000 federal income tax liability and shall hold the plaintiff harmless thereon. The plaintiff did not work outside of the home at all during 1999, and was gainfully employed outside of the home for only four months in 2000. Her principal contribution to the marriage during this time was as a homemaker, not as a wage earner.
13. Attorney fees are not awarded to the plaintiff The court finds that neither party is in a substantially better position than the other for the purpose of paying attorney fees, and that the award of attorney fees would be incompatible with the overall equitable distribution of the marital assets in this case.
Plaintiff's attorney shall prepare a judgement file within thirty days of the date of this judgement. Said judgement file shall be signed by both the attorney for the plaintiff and the defendant.
_________________________ Terence A. Sullivan Superior Court Judge